# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs July 10, 2012

## LARRY BOYD v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 08-06088       W. Mark Ward, Judge**

**No. W2011-02035-CCA-R3-PC  - Filed September 5, 2012**

The petitioner, Larry Boyd, appeals the denial of his petition for post-conviction relief.  He argues that he received ineffective assistance of counsel, which led him to enter a guilty plea "under duress."  Specifically, he asserts that counsel "refused" to set the case for trial and failed to investigate the facts of the case, interview key witnesses, and adequately communicate with him.  After review, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Taurece A. Riley, Memphis, Tennessee, for the appellant, Larry Boyd.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Jessica Banti, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

On September 8, 2009, the petitioner entered <u>Alford</u> pleas to six counts of attempted manslaughter in exchange for a two-year sentence per count, to be served concurrently, and one count of employing a firearm during the commission of a dangerous felony in exchange for six years, to be served consecutively, for an effective sentence of eight years.  The State announced at the guilty plea hearing that, had the case gone to trial, it would have shown the petitioner approached six people on June 10, 2008, including a mother and her infant child, and fired multiple shots at them.  The petitioner was identified as the shooter, and he gave

a statement to police admitting that he had fired the shots but said he had done so into the air.

The petitioner filed a *pro se* petition for post-conviction relief on July 28, 2010, alleging that his trial counsel was ineffective. Counsel was appointed, and an amended petition was filed on February 14, 2011, alleging that the petitioner's trial counsel failed to properly explain, discuss, or consult with him regarding his case; fully investigate the facts and circumstances of the alleged incident; contact and interview key defense witnesses; object to the court's denial of his request to appoint new counsel; and that, because of these deficiencies and counsel's refusal to set the case for trial, the petitioner entered a guilty plea "under duress."

At the post-conviction evidentiary hearing, the petitioner testified that he felt coerced into entering a guilty plea because trial counsel and the judge would not set his case for trial. He stated that trial counsel never conducted an investigation into any of the aspects of the case, which the petitioner had asked him to do, and interviewed only people on the State's witness list. Although he alleged that trial counsel failed to contact the petitioner's list of witnesses, the petitioner offered no witnesses at his evidentiary hearing. Additionally, he stated that his court date was continually set back for a period of five or six months without his presence in the courtroom, which is why he asked for new counsel.

Trial counsel testified that he was appointed to represent the petitioner on September 24, 2008, and filed a discovery motion on October 24, 2008. He recalled the petitioner's statement to the police was that he fired straight up into the air, a claim which was supported by a witness statement obtained by the defense. Counsel told the petitioner that, in his opinion, it should be a "reckless endangerment or something" and that "it was preposterous for [the petitioner] to be indicted for attempted murder in the second degree." Counsel testified that he was surprised when the petitioner agreed to the plea deal because he had been "adamant from the start that he wasn't trying to kill anybody[.]"

Following the evidentiary hearing, the post-conviction court entered a detailed written order denying relief, finding the petitioner failed to prove either ineffective assistance of counsel or that his guilty plea was a product of duress. The court found that the petitioner entered a knowing, intelligent, and voluntary guilty plea.

## ANALYSIS

On appeal, the petitioner argues that he entered his guilty plea because trial counsel failed to provide effective assistance of counsel. Specifically, the petitioner alleges that counsel neglected to investigate the facts of the case and interview key defense witnesses,

failed to adequately communicate with him, and "refused" to set the case for trial for almost a year, even after the petitioner's repeated requests for a trial. The State responds that the petitioner failed to provide witnesses or information at the evidentiary hearing that, in his view, trial counsel should have prepared to use at trial. Additionally, the State argues that the "post-conviction court was presented with nothing more than a credibility contest between the petitioner and counsel, and the trial court plainly found that the petitioner did not overcome" his burden of proof.

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Id. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the trial court's findings as to the credibility of witnesses or the weight of their testimony. Id. However, review of a trial court's application of the law to the facts of the case is de novo, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998).

## I. Ineffective Assistance of Counsel

The petitioner argues that his trial counsel's performance was deficient because counsel failed to investigate the facts of the case, interview key defense witnesses, and adequately communicate with him.

The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed de novo, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999). The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. See U.S. Const. amend. VI; Tenn. Const. art. I, § 9. To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he would not have pled guilty but would instead have insisted on proceeding to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

### a.  Failure to Investigate and Interview

The petitioner testified at the post-conviction evidentiary hearing that "[e]very time [trial counsel] came to see [him] . . . [trial counsel] was telling [him] the same things, basically, over and over." He stated that trial counsel never conducted an investigation into any of the aspects of his case for which he asked.

Counsel testified to the contrary, stating that he visited the scene twice and had his investigator take photographs. He could not remember if the petitioner gave him a list of witnesses but stated that he would have attempted to question them before going to trial. He also remembered telling the petitioner that he interviewed as many victims as possible, but not all of them would speak with him.

As to the petitioner's argument that counsel failed to investigate the case, the post-

-4-

conviction court held that the petitioner failed to show "deficient performance" and "prejudice." Specifically, it found that "[c]ontrary to the allegation, the record in this case shows that [trial counsel] conducted a complete investigation of the case," referring to counsel's testimony that he visited the scene twice, took photographs, interviewed witnesses willing to talk, and made a transcription of the preliminary hearing.

The court also held that the petitioner failed to show "prejudice" regarding his allegation of trial counsel's failure to interview key defense witnesses. The court pointed out that, assuming the petitioner gave a list of names to counsel, "none of these alleged witnesses were produced during the post-conviction evidentiary hearing[]."

Because the record supports the post-conviction court's findings as to the claims of failure to investigate and interview key defense witnesses, we affirm the post-conviction court's holdings in this area.

### b. Inadequate Communication

The petitioner argues that trial counsel's performance was deficient because of inadequate communication. For support, he points to his testimony at the post-conviction hearing that counsel only came to see him three times during the course of nearly a year.

Counsel testified at the post-conviction hearing that, although he could not remember how many times he spoke with the petitioner during the course of his case, he remembered presenting the State's second offer to the petitioner after a reduction in charges and sentence length. He explained to the petitioner that he was not trying to persuade him to take the deal but that he was duty bound as his attorney to present him with the State's offer. He also told the petitioner, "[I]f we set it for trial then we get a hearing date first and file a motion to suppress your statement [and a] motion to suppress the photospread."

Furthermore, the petitioner admitted during voir dire examination at his plea hearing that counsel explained several aspects of the case to him before the petitioner entered his guilty plea. First, counsel had explained that an argument could be made at trial for a misdemeanor charge, but if they were unsuccessful at trial, the petitioner would be subjected to a harsher sentence because of his criminal history. Second, counsel told him that he interviewed every witness that would talk to him. Third, counsel gave to the petitioner a copy of the interview sheets, the photographs of the crime scene, and the preliminary hearing transcript.

The post-conviction court found that the petitioner failed to testify or offer any evidence regarding this issue during the post-conviction hearing and, subsequently,

determined that the petitioner failed to show "deficient performance."

After reviewing the record, we agree that the petitioner failed to prove that trial counsel inadequately communicated with him. Accordingly, we conclude that the record supports the post-conviction court's determination that the petitioner failed to prove trial counsel performed deficiently in any area.

## II. Unknowing and Involuntary Plea

The petitioner argues that trial counsel's refusal to set his case for trial caused him to be "left with the only option he had, plead guilty and then seek an evidentiary hearing."

When analyzing a guilty plea, we look to the federal standard announced in Boykin v. Alabama, 395 U.S. 238 (1969), and the state standard set out in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242. Similarly, our Tennessee Supreme Court in Mackey required an affirmative showing of a voluntary and knowledgeable guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. Pettus, 986 S.W.2d at 542.

A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he or she fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904. Because the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. Blankenship, 858 S.W.2d at 904. These factors include: (1) the defendant's relative intelligence; (2) his familiarity with criminal proceedings; (3) whether he was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against him and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

At the post-conviction hearing, the petitioner testified that he entered the guilty plea because he felt as "though [he] really had no other choice." He said that he asked trial counsel and the judge to set his case for trial on several occasions, but "[t]hey wouldn't set [him] for trial." He further stated, "They just kept offering me things, offering me things."

In response to this testimony, the court reviewed the petitioner's voir dire examination and questioned him directly:

THE COURT: You were telling the truth at the time? You were under oath when [the trial court] was asking you some questions; do you remember those questions?

THE [PETITIONER]: Yes, sir. Yes, sir.

THE COURT: Do you remember the questions that [the trial court] was asking you?

THE [PETITIONER]: Yes, sir.

THE COURT: He asked you, "Are you entering this plea without any pressures being put on you by other people?" And your response was, "Yes, sir."

THE [PETITIONER]: Yes, sir.

THE COURT: Were you telling the truth at that time?

THE [PETITIONER]: Yes, sir.

THE COURT: There were no pressures put on you or anything?

THE [PETITIONER]: No, sir.

THE COURT: He asked you, "Are you entering this plea without any promises other than this deal?"

THE [PETITIONER]: Yes, sir.

THE COURT: And you answered, "Yes, sir."

THE [PETITIONER]: Yes.

THE COURT: Were you telling the truth at that time?

THE [PETITIONER]: Yes, sir.

THE COURT: He asked you, "Are you entering this plea without any threats?"

THE [PETITIONER]: Yes, sir. I say yes, sir.

THE COURT: But why did you enter the plea in your own words?

THE [PETITIONER]: I entered the plea, your Honor, because that was a best interest plea.

. . . .

THE COURT: So, what [sic] are you coming back . . . asking to take back the two and the six years for?

THE [PETITIONER]: Because, your Honor, I wanted to go to trial in this matter, but they wouldn't set it for trial.

THE COURT: Why didn't you tell [the trial court] I don't want the two and the six, I want a trial?

THE [PETITIONER]: Your Honor, I done told him a thousand times, he keep kicking me out of his courtroom. Every time I mention trial in his courtroom, he kicks me out his courtroom.

THE COURT: All right. So, your petition for this Court is you want a new trial because [the trial court] wouldn't give you a trial?

THE [PETITIONER]: Yes, sir.

The post-conviction court held that the petitioner entered his guilty plea knowingly, intelligently, and voluntarily, finding that "this claim lack[ed] in any merit whatsoever. More specifically, this court does not believe the Petitioner. Petitioner has failed to carry his burden of proving either 'deficient performance' or 'prejudice.'"

Basically, this matter consisted of a determination of the credibility of the petitioner or his trial counsel. The post-conviction court determined that trial counsel, bolstered by the petitioner's responses at the guilty plea submission, was more credible than the petitioner. The record supports this determination, as well as the dismissal of the petition for post-conviction relief.

-8-

## CONCLUSION

Based upon the foregoing authorities and reasoning, the judgment of the post-conviction court is affirmed.

_____
ALAN E. GLENN, JUDGE